## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| QSR STEEL CORPORATION, LLC | ) Case No. 24-20562 |
|  | ) |
|  | ) |

### MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, AND (II) AUTHORIZING AND APPROVING GRANT OF ADEQUATE PROTECTION

QSR Steel Corporation, LLC ("QSR Steel"), as debtor and debtor-in-possession (collectively, the "Debtor"), by this motion (the "Motion"), respectfully seeks the issuance and entry of an interim order (the "Interim Order") and a final order (the "Final Order") for authority to, among other things, (i) pursuant to section 363 of Title 11 of the U.S. Code (the "Bankruptcy Code"), use, subject to certain terms and conditions, cash collateral within the meaning of section 363(a) of the Bankruptcy Code in which Liberty Bank ("Liberty") has a perfected first priority security interest and in which First-Citizens Bank and Trust Company and Philadelphia Indemnity Insurance Company may have second and third position security interests ("Cash Collateral"), and (ii) provide adequate protection under sections 361 and 363 of the Bankruptcy Code on account of such use.

In support of this Motion, the Debtor respectfully represent as follows:

### PRELIMINARY STATEMENT

1.      By this Motion, the Debtor seeks authority to use Cash Collateral in which the following entities, with their respective addressees, have or may claim a secured interest, in order of priority:

(a) Liberty Bank, 315 Main Street, Middletown, CT 06457,

(b) First-Citizens Bank and Trust Company, 155 Commerce Way, Portsmouth, NH 03801

(c) Philadelphia Indemnity Insurance Company, 231 Saint Asaphs Road, Suite 100, PO Box 3636, Bala Cynwyd, PA 19004

2.      As described in greater detail below, the Debtor has an immediate need to use Cash Collateral. In particular, the Debtor must use the Cash Collateral to continue as a going concern postpetition.  If the Debtor is unable to pay in the ordinary course, among other things, its employees, suppliers, utilities and landlords, the Debtor will be forced to cease operations and convert its case to Chapter 7.

3.      As established in the Budget, attached hereto as Exhibit A (the "Budget"), the Debtor expects to continue to operate on a cash positive basis or break-even level in the early stages of this case. While the Debtor seeks to reorganize by this proceeding, it is in all parties' best interest to preserve the Debtor's business as a going concern.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C.A. §§ 1334 and 157. Venue of the Debtor's Chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C.A. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C.A. § 157(b)(2). The statutory predicates for the relief sought herein are Sections 105, 361, 363 and 507 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTS

A.  **Introduction**

5.      On June 18, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code with the Clerk of this Court. The

Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1184 and 1186(b) of the Bankruptcy Code. A Subchapter V Trustee is expected to be appointed in this case.

6.      No trustee or examiner has been appointed in the Debtor's Chapter 11 case, nor is any creditors' committee is expected to be appointed herein pursuant to section 1181(b) of the Bankruptcy Code.

B. **Debtor's History and Business**

7.      Founded in 2000, the Debtor is a structural steel company that provides structural steel and miscellaneous metals to building owners and contractors throughout Connecticut and the Northeast. The Debtor manufactures miscellaneous metals, ladders, structural steel, rails and stairs. For the past twenty-four years, the Debtor has been involved in thousands of building projects generating millions of dollars in revenue.

8.      The Debtor is certified by the American Institute of Steel Construction and has a tremendous reputation in the construction industry in the State of Connecticut. The Debtor has been involved in large scale construction projects such as the renovation of the 200 year-old Greenwich theater where it provided 480 tons of steel, the renovation of a 100 year-old U.S. Post Office that was converted into retail space and for which it provided 300 tons of steel that were added to the interior of the building, and the renovation of student housing at Wesleyan University, to name a few.

9.      The Debtor operates its business from its facility located in Hartford, Connecticut. The Debtor employs approximately thirty-five (35) people.

10.     The Debtor is a Connecticut limited liability company.  The Debtor was initially incorporated under the name Quality Stair & Rail, LLC on February 9, 2000.  On October 30, 2007, the Debtor changed its name to QSR Steel Corporation, LLC.

11.     The Debtor has two (2) members, Glenn Salamone and David Rusconi, each of whom hold 50% of the membership interest in the company.

C.  **The Debtor' Secured Indebtedness**

12.     <u>Prepetition Credit Facility</u>.  The Debtor is indebted to Liberty pursuant to the following loan agreements and other documents and for the following amounts:

(a)     a Line of Credit Loan Agreement entered into on October 7, 2019 (the "Loan Agreement") by and between QSR Steel Corporation, LLC as borrower, Quality Companies, Inc., QSR Properties, LLC, Glenn Salamone and David Rusconi as guarantors and Liberty (as successor by merger to The Simsbury Bank and Trust Company, Inc.) as lender, providing for a revolving line of credit in the original principal amount of $1,500,000.00, evidenced by that certain Revolving Credit Note dated October 7, 2019 from QSR Steel to Liberty in the original principal amount of $1,500,000.00, all as amended by that certain Note and Mortgage Modification Agreement dated October 25, 2021 (the "Loan").

(b)     The Loan is secured by the Debtor's assets as evidenced by that certain Security Agreement dated October 7, 2019, which encumbered certain collateral of the Debtor, including accounts receivable, inventory, fixtures and equipment (the "Collateral").  As of the Petition Date, the amount of approximately $659,716.06 was due and owing on account of the Loan.  The Debtor is current with its repayment obligations under the Loan.

13.     The foregoing obligations of the Debtor as described in ¶ 13 hereof are hereinafter referred to as the "Liberty Prepetition Obligations."  The Liberty Prepetition Obligations are

secured by valid and duly perfected security interests (the "Liberty Prepetition Liens") in all of Debtor's personal property existing as of the Petition Date (the "Liberty Prepetition Collateral").

14.    In addition, the following entities have or may claim an interest in Cash Collateral by virtue of the following: (i)  Debtor entered into a Master EFA Agreement with First Citizens Bank & Trust ("First Citizens"), whereby it obtained secured financing[1] for the purchase of a Swift Cut Model XP510DD Saw Serial No. 16270721 in the amount of $76,000 and which contained a grant of a security interest not only in the Saw but in all of the Debtor's accounts, contract rights and the like, and their proceeds, for which a UCC-1 financing statement in favor of Financial Agent Services (who is acting in a  representative capacity for First Citizens) was recorded on March 21, 2022, and (2) the Debtor entered into a General Indemnity Agreement Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") dated December 21, 2020 for which a UCC Financing Statement in favor of Philadelphia Indemnity covering all assets of the Debtor pursuant was recorded on June 12, 2023. As of the Petition Date, the amount of approximately $ 40,390.84 was due and owing to First Citizens and the Debtor is current with its obligations to it.  As of the Petition Date, any debt owed to Philadelphia Indemnity is contingent and unliquidated.

D. **Events Leading to the Commencement of the Chapter 11 Case**

15.    The Debtor commenced the instant bankruptcy filing after suffering a substantial adverse arbitration award in the amount of $2,291,133.19 in favor of Haynes Construction Company ("Haynes"), which award was confirmed by the Connecticut Superior Court on April 30, 2024, but which is presently on appeal to the Appellate Court.  At issue on appeal is whether the Court's order confirming the arbitration award must be reversed on the grounds that it violates Connecticut's strong public policy of protecting the attorney/client relationship and confidential

---

[1] The secured loan requires a monthly payment in the amount of $1,784.51.

information that a client provides to its attorney.  The attorney/client relationship was a central focus of the arbitration because the law firm representing Haynes in the action *against the Debtor* is the very same law firm that had represented the Debtor in eleven (11) similar lawsuits over an eight (8) year period of time.  As will be shown on appeal, the Debtor believes that its confidential business information was improperly used against it in the Haynes litigation.

16.     On June 13, 2024, Haynes filed an application for a prejudgment remedy against the Debtor which seeks to attach assets in the amount of $2,906,371.28, which adds interest and attorneys' fees to the principal amount of the arbitration award it received in its favor.

17.     The Debtor is seeking protection under Subchapter V of Chapter 11 of the Bankruptcy Code to preserve its assets, which would otherwise be dismembered by the collection efforts of Haynes, with the objective of maintaining its operations and the employment of dozens of workers in the State and ultimately, of successfully reorganizing.

**E. The Debtor's Need for Use of Cash Collateral**

18.     Given the liens and encumbrances of Liberty upon substantially all of the Debtor's assets, the Debtor will be unable to continue its business operations absent some form of immediate relief from this Court. Without immediate relief, the Debtor will be unable to fund the day-to-day operations that are essential to the Debtor's continued existence as a going concern to the detriment of its estate.  To meet its ongoing financing needs, the Debtor seeks Court authority to use its cash collateral, subject to the terms and conditions of the Motion, the Budget (as defined below), the Interim Order and the Final Order.

## RELIEF REQUESTED

A. **Interim Relief**

19.     By this Motion, the Debtor seeks the entry of the Interim Order, substantially in the form of that which is attached hereto as Exhibit "B" (the "Interim Order"), (i) authorizing the Debtor to use the "Cash Collateral," defined as any cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents now or hereafter in the possession, custody or control of the Debtor, subject to the terms and conditions of the Motion, the Interim Order and a Final Order and (ii) authorizing and approving grant of adequate protection on account of such use. Further, the Debtor seeks the entry of a Final Order, after at least 14 days' notice of the Motion, in substantially the form of the Interim Order with such other or different terms and conditions as may be agreed to by the Debtor and Liberty or ordered by the Court.

20.     Bankruptcy Rule 4001(b) requires a final hearing on a motion for authorization to use cash collateral to be held on no less than 14 days' notice. Rule 4001(b) permits the Court to conduct a preliminary hearing, prior to the expiration of the 14-day period, to consider authorizing the Debtor to use that amount of Cash Collateral as is necessary to avoid immediate and irreparable harm to the estate pending the final hearing.

21.     As indicated above, absent authorization to use Cash Collateral, the Debtor will not be able to cover the expenses of operation that will accrue until the time a final hearing could be held on the Motion. Thus, without authorization to use Cash Collateral on an immediate basis, the Debtor would be forced to convert its case to Chapter 7, which would cause irreparable harm to its estate.

22.     Accordingly, the Debtor is requesting that the Court exercise its authority to enter the Interim Order pursuant to Bankruptcy Rule 4001(b)(2). Entry of the Interim Order will not

cause irreparable harm to interested parties, and indeed will benefit all parties in interest by preserving the Debtor's going-concern value.  In addition, such parties will be granted an opportunity to assert an objection to the Motion subsequent to the entry of the Interim Order and in connection with the final hearing on the Motion.  The Interim Order permits the interim use of Cash Collateral in accordance with the Budget (as defined herein) pending a final hearing which will be scheduled pursuant to the Interim Order.

B.      **Terms**

23.     The specific financial terms and conditions of the Debtor's proposed use of Cash Collateral are as set forth in the Interim Order.  The principal elements of the Interim Order are summarized as follows:

(a)     Use of Cash Collateral.  The Debtor will be permitted to make disbursements of Cash Collateral Account in its discretion, for the purpose of meeting the Debtor's cash needs from the date of entry of the Interim Order through July 26, 2024 or such other date as may be ordered by the Court (the "Interim Period"), provided that the amount of each disbursement shall not exceed the amounts specified in the Budget for the Interim Period, substantially in the form of that which is attached hereto as Exhibit "A". The Debtor shall use the Cash Collateral solely to fund its ordinary course business operations, and at all times in accordance with the Budget.  For each weekly period set forth in the Budget, the Debtor's actual cash disbursements for such period shall not exceed the line item amount for such category as set forth in the Budget, provided, however, that notwithstanding the foregoing, (i) expenditures of the Debtor under any line item of the Budget for any period may exceed the expenditure amount budgeted for such line item by 20%, so long as aggregate total expenditures during the term of this order do not exceed the total amount budgeted for such period, and (ii) any line item expenditures budgeted during any given week, but

not actually paid or expended during such week, may be paid during the following weeks the Interim Order is in effect.  In no event shall aggregate total expenditures by the Debtor for the Interim Period exceed the total expenditures for the Interim Period as set forth on the Budget, provided, however, that Debtor and Liberty may, in their sole discretion, agree to increase cash disbursements and operating expenditures in the Budget and upon written agreement by Liberty to so modify the Budget, Debtor will be authorized to use Cash Collateral in such amount without the need for any further order of the Court.

(b)    Replacement Liens.  As adequate protection for any Cash Collateral expended by the Debtor pursuant to the Interim Order, Liberty will receive, pursuant to §§ 361(1) and 363(e) of the Bankruptcy Code, a first lien (the "Replacement Liens") to secure an amount of Liberty's claims equal to the amount of Cash Collateral actually expended by the Debtor but only to the extent of any decline in the value of the Liberty Prepetition Collateral (subject only to nonavoidable, valid, enforceable and perfected liens and security interests in the assets of Debtor, as prepetition Debtor, that existed on the Petition Date, are not subject to avoidance pursuant to the Code, and are in favor of such third parties holding perfected liens or security interests which are superior in priority, after giving effect to any existing subordination or intercreditor arrangements, to Liberty's security interests in and liens on the assets of Debtor).  The Replacement Liens will be on all personal property and assets of the Debtor, of any kind or nature whatsoever, whether now owned or hereafter acquired by any Debtor, and all proceeds, rents or profits thereof (collectively, the "DIP Collateral").  Similarly, the Debtor proposes providing First Citizens and Philadelphia Indemnity with the same Replacement Liens provided to Liberty, but in the same priority they had prepetition on the DIP Collateral.

(c)    <u>Adequate Protection Payments.</u>    As further adequate protection, the Debtor will make any regular monthly payments to Liberty that come due under the Loan Agreement during the term of this Interim Order.

(d)    <u>Superpriority Administrative Claim</u>.  Liberty shall have an allowed administrative expense claim in an amount equal to the amount of Cash Collateral actually expended by Debtor pursuant to this Order, which claim shall have the highest administrative priority under Sections 503(b), 507(a)(1) and 507(b) of the Code (the "Super-Priority Claim"), and such claim shall have priority over, and be senior to, all other administrative claims.

(e)    <u>Professional Fees</u>.  Notwithstanding anything to the contrary, the Replacement Liens and priority claims granted to Liberty pursuant to the Interim Order shall be subject and subordinate to the payment of the following (to the extent that there are not sufficient, unencumbered funds in Debtor's estates to pay such amounts at the time payment is required to be made and, in the case of Debtor's Professionals (as defined below), to the extent that such Debtor's Professionals do not have an adequate cash security deposit or retainer balance on hand): (a) compensation and expense reimbursement (collectively, "Professional Expenses") of Pullman & Comley, LLC, as prospective attorneys for Debtor, and Marcum, LLP, as prospective accountants and tax and financial advisors for the Debtor (the "Debtor Professionals"), to the extent that such Professional Expenses, (i) were incurred on or after the Petition Date and prior to the earlier to occur of end of the Interim Period, (ii) are approved for payment by anl order of the Court, after notice and a hearing, or pursuant to an administrative procedure established by Court order, and (iii) do not exceed, without the prior written consent of Liberty, in the aggregate as to all amounts paid or to be paid post-petition, the sum of $50,000, plus any retainer held by the Debtor Professionals on the Petition Date; (b) quarterly fees required to be paid to the Office of the United

States Trustee pursuant to 28 U.S.C.A. § 1930(a)(6); and (c) any unpaid wages owed by the Debtor (collectively, the "Carve-Out"); provided, however, that no Cash Collateral and no amounts received pursuant to the Carve-Out shall be used by any person or entity to pay Professional Expenses incurred in connection with any attempt to invalidate, set aside or subordinate the Liberty Prepetition Indebtedness, the Liberty Prepetition Liens or the Replacement Liens.

(f)     <u>Reporting</u>.  Each week for the duration of the Interim Period, by the Wednesday following the end of each such week, the Debtor shall provide Liberty with a written accounting of (A) all Cash Collateral in their possession, custody or control, and (B) any Cash Collateral expended and the purposes for which it was expended pursuant to the Interim Order.

(g)     <u>Default</u>.  A failure by the Debtor to comply with any provisions of the Interim Order, which failure is not remedied within five business days of Debtor's receipt of written notice of such failure, shall automatically terminate the Debtor's authority to use or spend any further Cash Collateral without (i) further order of this Court and (ii) notice and the opportunity to be heard by Liberty at a hearing prior to granting of such order,

C.     <u>Final Relief</u>

24.     Pursuant to Fed. R. Bankr. P. 4001(b)(2), the Debtor also requests authority for the use of Cash Collateral in accordance with the Budget after a final hearing to be held no earlier than 14 days after service of the Motion.  It is expected that the same or similar terms for such use as are set forth in the attached Interim Order will continue to apply to Cash Collateral usage after a final hearing.

D.     The Lender's Interests are Adequately Protected

25.     Where a debtor has proposed to use cash collateral, the Court, pursuant to section 363(c) of the Bankruptcy Code, may permit the use of cash collateral so long as the debtor provides "adequate protection of such interest" in accordance with section 361 of the Bankruptcy Code. Section 361 of the Bankruptcy Code sets forth three nonexclusive examples of adequate protection. Adequate protection "is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (quoting *In re Beker Industries Corp.*, 58 BR 725, 736 (Bankr. S.D.N.Y. 1986)). *See also Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 85 F.3d 970, 972 (2d Cir. 1996) ("[g]enerally, the right to adequate protection allows a secured creditor or its representative to propose a method of protecting its interest against the diminution in value of the security during a bankruptcy proceeding."). Section 361 states, in pertinent part, that when "adequate protection" of an entity's interest in property is required under Section 363, such adequate protection may be provided by:

(1)     requiring the [debtor-in-possession] to make a cash payment or periodic cash payments to such entity, to the extent that the … use, sale, or lease under section 363 of this title ... results in a decrease in the value of such entity's interest in such property;

(2)     providing to such entity an additional or replacement lien to the extent that such ... use, sale [or] lease ... results in a decrease in the value of such entity's interest in such property; or

(3)     granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

26.     The concept of adequate protection in the context of a proposed use of cash collateral is intended to be flexible, especially in the formative stages of a chapter 11 case, and must take into account the interests of the other creditors of the estate.  *In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987)

27.     Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with section 361(2) and provides adequate protection within the meaning of section 363(e) of the Bankruptcy Code where the debtor in possession is using cash collateral to generate new collateral, including accounts receivable, or is operating profitably or at a break-even level in the postpetition period.  *In re Carbone Companies, Inc.*, 395 B.R. 631, 636 (Bankr. N.D. Ohio 2008); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re Dynaco Corp.*, 162.B.R. 389, 393-95, 25 (Bankr. D.N.H. 1993); *In re T.H.B. Corp.*, 85 B.R. 192, 195, (Bankr. D. Mass. 1988).

28.     The Debtor respectfully submits that pursuant to section 361(2) of the Bankruptcy Code, the Replacement Liens and other forms of adequate protection granted to Liberty, and to First Citizens and Philadelphia Indemnity, constitute adequate protection for the Debtor's use of Cash Collateral.  As provided in the Budget, the Debtor is expected to be cash flow positive, such that Replacement Liens as against on-going receivables and proceeds should provide Liberty, as well as First Citizens and Philadelphia Indemnity with adequate protection of their interests for the Debtor's use of Cash Collateral.  The additional payment of regular monthly Loam payments and the granting of the superpriority administrative expense claim further establishes that Liberty is adequately protected.

29.     For the reasons set forth herein, the Debtor submits that, under all of the circumstances of these cases, the interests of Liberty, First Citizens and Philadelphia Indemnity

13

are adequately protected for the Debtor's use of Cash Collateral subject to the Interim Order. Thus, approval of the relief requested herein will allow the Debtor to pursue a reorganization of its businesses, thereby maximizing value for its creditors without harming or prejudicing the rights or interests of Liberty, First Citizens or Philadelphia Indemntiy.

## **NOTICE AND PRIOR APPLICATIONS**

30.     On June 18, 2024, the Debtor served a copy of this Motion, with all attachments, along with a notice of hearing on the Motion, by email transmission and/or overnight mail, upon (i) the Office of the United States Trustee, (ii) Liberty Bank, 315 Main Street, Middletown, CT 06457, (iii) First-Citizens Bank and Trust Company, 155 Commerce Way, Portsmouth, NH 03801, (iii) Philadelphia Indemnity Insurance Company, PO Box 3636, Bala Cynwyd, PA 19004 (iv) and the creditors listed on the Debtor's lists of the 20 largest unsecured claims against the Debtor (the "Notice Parties"). Upon entry of the Interim Order, the Debtor shall promptly mail executed copies of the Interim Order to the Notice Parties. In light of the nature of the relief requested herein, the Debtor submits that no further notice of the Motion is necessary or required.

31.     No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court issue and enter the attached Interim Order and after a final haring a Final Order granting this Motion and grant such other and further relief as the Court may deem just and proper.

Dated:    Bridgeport, Connecticut
          June 18, 2024

                              QSR STEET CORPORATION, LLC
                              DEBTOR AND DEBTOR-IN-POSSESSION


                    By:    /s/Irve J. Goldman
                           Irve J. Goldman (ct02404)
                           Kristin B. Mayhew (ct20896)
                           Jonathan Kaplan (ct27126)
                           Pullman & Comley, LLC
                           850 Main Street, P.O. Box 7006
                           Bridgeport, CT  06601-7006
                           203 330 2000 Fax: 203 576 8888
                           igoldman@pullcom.com
                           kmayhew@pullcom.com
                           jkaplan@pullcom.com
                           Proposed Attorneys for the Debtor

Active/84253.3/KMAYHEW/15427687v2