# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | ) ) Chapter 11 ) |
| QSR STEEL CORPORATION, LLC, | ) Case No. 24-20562(JTT) ) |
| Debtor. | ) ) ) |

**INTERIM ORDER GRANTING AUTHORITY TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION AND NOTICE OF FINAL HEARING**

By motion (the "Motion") dated June 18, 2024, QSR Steel Corporation, LLC ("QSR" or "Debtor") the above-captioned debtor and debtor in possession , moved this Court for entry of this interim order in this case under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Case") authorizing them to use funds that constitute cash collateral of Liberty Bank ("Liberty" or "Lender") pursuant to certain prepetition financing arrangements with Liberty described below and that may constitute cash collateral of First-Citizens Bank and Trust Company and Philadelphia Indemnity Insurance Company. Pursuant to Bankruptcy Rule 4001(b), an interim emergency hearing was held on June __, 2024 after due notice and a hearing, and the Court hereby finds and orders as follows.

**THE COURT FINDS:**

A. Filing of Petition. On June 18, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief (collectively, the "Petition") under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code"). Pursuant to section 1184 of the Bankruptcy Code, the Debtor has have retained possession of its assets and is authorized to continue the operation and management of its business as a debtor-in-possession.

B. **No Creditors' Committee.** No creditors' committee has been appointed in the Case pursuant to section 1181(b) of the Bankruptcy Code.

C. **Prepetition Indebtedness to Liberty and Security Therefor.** Liberty extended prepetition financing to the Debtor and certain of its affiliates pursuant to the following (hereinafter referred to as "Liberty Prepetition Indebtedness"):

(a) a Line of Credit Loan Agreement entered into on October 7, 2019 (the "Loan Agreement") by and between QSR Steel Corporation, LLC as borrower, Quality Companies, Inc., QSR Properties, LLC, Glenn Salamone and David Rusconi as guarantors and Liberty (as successor by merger to The Simsbury Bank and Trust Company, Inc.) as lender, providing for a revolving line of credit in the original principal amount of $1,500,000, evidenced by that certain Revolving Credit Note dated October 7, 2019 from QSR Steel to Liberty in the original principal amount of $1,500,000.00, all as amended by that certain Note and Mortgage Modification Agreement dated October 25, 2021 (the "Loan").

(b) The Loan was secured by the Debtor's assets as evidenced by that certain Security Agreement dated October 7, 2019, which encumbered certain collateral of the Debtor, including accounts receivable, inventory, fixtures and equipment (the "Collateral"). As of the Petition Date, the amount of approximately $659,716.06 was due and owing on account of the Loan. The Debtor is current with its repayment obligations under the Loan.

D. In connection with the Liberty Prepetition Indebtedness, Liberty was granted liens (the "Liberty Prepetition Liens") on substantially all the assets of the Debtor, including, without limitation, inventory, accounts receivable and the proceeds thereof (the "Liberty Prepetition Collateral"). The Debtor has acknowledged that as of the Petition Date it was indebted to Liberty

in an amount of not less than $ 659,716.06 pursuant to the Loan Agreements and other documents evidencing the Liberty Prepetition Indebtedness.

E.  In addition, the following entities have or may claim an interest in Cash Collateral by virtue of the following: (i)  Debtor entered into a Master EFA Agreement with First Citizens Bank & Trust Company ("First Citizens"), whereby it obtained secured financing  for the purchase of a Swift Cut Model XP510DD Saw Serial No. 16270721 in the amount of $76,000 and which contained a grant of a security interest not only in the Saw but in all of the Debtor's accounts, contract rights and the like, and their proceeds, for which a UCC-1 financing statement in favor of Financial Agent Services (who is acting in a  representative capacity for First Citizens) was recorded on March 21, 2022, and (2) the Debtor entered into a General Indemnity Agreement Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") dated December 21, 2020 for which a UCC Financing Statement in favor of Philadelphia Indemnity covering all assets of the Debtor pursuant was recorded on June 12, 2023.  As of the Petition Date, the amount of approximately $40,390.84 was due and owing to First Citizens and the Debtor is current with its obligations to it.  As of the Petition Date, the debt owed to Philadelphia Indemnity was contingent and unliquidated.

F.  Need for Use of Cash Collateral.  Prior to the Petition Date, the Debtor had no offer to provide any financing pursuant to section 364 of the Bankruptcy Code. The Debtor therefore has an immediate need to use cash on hand and cash from operations ("Cash Collateral") to fund the next several weeks of operations until a final hearing on the Motion can be held.  Substantially all of the Debtor's cash on hand and cash flow from operations consists of the proceeds of prepetition accounts or contract rights that are subject to liens in favor of Liberty, First Citizens and Philadelphia Indemnity and, therefore, all such cash is Cash Collateral in which they have an

interest. If the Debtor is not able to use Cash Collateral as provided herein, it will be unable to fund payroll and other operating expenses that are necessary to maintain the value of its assets, preserve its going-concern value and enable it successfully to reorganize.

G. Cause.  The entry of this order will provide adequate protection to Liberty, First Citizens and Philadelphia Indemnity for the Debtor's use of Cash Collateral and will also minimize disruption of the Debtor's business and will preserve and maintain the assets of each Debtor's estate, will avoid immediate and irreparable harm to, and is in the best interest of, the Debtor, its creditors and its estate.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Use of Cash Collateral. For purposes of this order, the term "Cash Collateral" shall refer to any cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents now or hereafter in the possession, custody or control of the Debtor, whether generated or received before or after the Petition Date. The Debtor is authorized to use Cash Collateral solely in accordance with the following terms:

(a) The Debtor is authorized to use an amount of Cash Collateral until the Termination Date (as defined below) not to exceed $_____ (the "Total Authorized Expenditure Amount") solely to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as Exhibit "A" (the "Budget"). For each weekly period set forth in the Budget, the Debtor's actual cash disbursements for such period shall not exceed the line item amount for such category as set forth in the Budget, provided, however, that notwithstanding the foregoing, (i) expenditures of the Debtor under any line item of the Budget for any period may exceed the expenditure amount budgeted for such line item by 20%, so long as aggregate total expenditures during the term of this order do not exceed the total amount budgeted for such period,

4

and (ii) any line item expenditures budgeted during any given week, but not actually paid or expended during such week, may be paid during the following weeks for the period covered by this Interim Order. In no event shall aggregate total expenditures by the Debtor through the Termination Date exceed the Total Authorized Expenditure Amount absent approval of the Court, provided, however, that through the Termination Date, Liberty and Debtor may, in their sole discretion, agree, in writing, to increase cash disbursements and operating expenditures in the Budget, and upon such agreement, Debtor will be authorized to use Cash Collateral in such amount without the need for any further order of the Court.

(b) The Debtor's authority to use Cash Collateral without further order of the Court issued after notice and hearing or the written consent of Liberty shall automatically expire upon the soonest to occur of (i) July 26, 2024 at 5:00 p.m., or (ii) regardless of whether the Debtor has expended the entire amount set forth in ordering paragraph 1(a), the failure by the Debtor to materially comply with any provision of this Order, which failure is not remedied within five business days after receiving written notice from Liberty of such failure (the earlier of such date, the "Termination Date"). Upon the Termination Date, the Debtor's authority to use or spend any further Cash Collateral shall automatically terminate unless and until the Debtor obtains the written consent of Liberty or a further order of this Court issued after notice and an opportunity for a hearing.

(c) Each week from June __, 2024 through the Termination Date, the Debtor shall provide Liberty with: (i) a written accounting of (A) all Cash Collateral in their possession, custody or control, and (B) any Cash Collateral expended and the purposes for which it was expended pursuant to this Order. The accounting is to be provided within four business days of the close of each week.

2. <u>Replacement Liens for Cash Collateral</u>.  As adequate protection for any Cash Collateral expended by the Debtor pursuant to this Order, Liberty, First Citizens and Philadelphia Indemnity are granted replacement liens as follows:

(a) Liberty is hereby granted, pursuant to sections 361(1) and 363(e) of the Bankruptcy Code, a first lien (the "Replacement Lien") to secure an amount of Liberty's prepetition claims equal to the amount of Cash Collateral actually expended by the Debtor to the extent of any decline in the value of the Liberty Prepetition Collateral as of the Petition Date (whether as a result of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise). The Replacement Lien shall be subject only to nonavoidable, valid, enforceable and perfected liens and security interests held by third parties in the assets of Debtor, as a prepetition debtor, that existed on the Petition Date, are not subject to avoidance pursuant to the Bankruptcy Code, and are superior in priority to the Liberty Prepetition Liens, after giving effect to any existing subordination or intercreditor arrangements. The Replacement Lien shall attach to all personal property and assets of the Debtor, of any kind or nature whatsoever, whether now owned or hereafter acquired by any Debtor, and all proceeds, rents or profits thereof (collectively, the "DIP Collateral").  Liberty's Replacement Lien hereunder shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative in this case or any subsequent case or proceedings under the Bankruptcy Code. Any security interest or lien upon the DIP Collateral which is avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code shall be subordinate to the security interests in and Replacement Liens upon the DIP Collateral granted to Liberty

(b)     First Citizens and Philadelphia Indemnity are hereby each granted a Replacement Liens in the DIP Collateral, subordinate in priority to the Replacement Lien of Liberty and in same priority that their respective security interests and liens had against the Debtor's assets prepetition.

3. <u>Perfection of Replacement Lien</u>.  The Replacement Liens granted by this Order shall be perfected by operation of law upon execution and entry of this Order by the Court.  For the avoidance of doubt, Liberty, First Citizens and Philadelphia Indemnity shall not be required to take any action, including, without limitation, the filing of financing statements, mortgages, deeds of trust or other documents, in order to validate or perfect such Replacement Liens. If Liberty, First Citizens or Philadelphia Indemnity, in their sole discretion, nonetheless chooses to file financing statements, mortgages, deeds of trust or other documents or otherwise confirm perfection of such security interests and liens, Liberty, First Citizens and Philadelphia Indemnity are authorized to effect such filings and recordations, and all such financing statements, deeds of trust or similar documents shall be deemed to have been filed or recorded as of the Petition Date.

4. <u>Reservations of Rights as to Replacement Liens</u>.  This Order is without prejudice to the rights of any party in interest to challenge the Replacement Liens granted herein or the security interests and liens of Liberty, First Citizens and Philadelphia Indemnity. The priority claims and Replacement Liens provided to each secured creditor hereunder shall be valid only to the extent they held a valid and perfected security interest or lien on personal property of the Debtor that would give rise to an interest in Cash Collateral as of the Petition Date.

5. <u>Adequate Protection Payments</u>.   As further adequate protection for the use of Cash Collateral, the Debtor shall make any regular monthly payments to Liberty that come due under the Liberty Loan Agreement during the term of this Interim Order.

6. <u>Priority Claims</u>.  In addition to the Replacement Liens, to the extent the adequate protection provided to Liberty pursuant to this Interim Order proves to be inadequate, resulting in a claim allowable under section 507(a)(2) of the Bankruptcy Code,  Liberty shall have a priority claim in an amount equal to the amount of such deficiency, which claim shall have the highest administrative priority under sections 503(b), 507(a)) and 507(b) of the Bankruptcy Code (the "Super-Priority Claim"), and such claim shall have priority over, and be senior to, all other administrative claims under chapter 11 or chapter 7 of the Bankruptcy Code.

7. <u>Cash Collection Procedures</u>.  From and after the date of entry of this Order, until further order of the Court, all collections of accounts receivable, customer checks, bank deposits, Cash Collateral and all proceeds of sales of any assets or services provided by the Debtor and all other cash which shall come into the Debtor's possession or control, or to which the Debtor shall become entitled, shall be deposited into one or more debtor in possession operating and/or payroll accounts.

8. <u>Professional Fees</u>.  Notwithstanding anything to the contrary contained in this Order, the Replacement Liens and priority claims granted to Liberty, First Citizens and Philadelphia Indemnity pursuant to this Order shall be subject and subordinate to the payment of the following (to the extent that there are not sufficient, unencumbered funds in the estate to pay such amounts at the time payment is required to be made and, in the case of Debtor Professionals (as defined below), to the extent that such Debtor Professionals do not have an adequate cash security deposit or retainer balance on hand): (a) compensation and expense reimbursement (collectively, "Professional Expenses") of Pullman & Comley, LLC as prospective attorneys for Debtor, and Marcum, LLP as prospective accountants and tax and financial advisors for the Debtor (the "Debtor Professionals"), to the extent that such Professional Expenses, (i) were incurred on or after the Petition Date and prior to the earlier to occur of the Termination Date or receipt by Debtor

8

Professionals from Liberty of written notice of a Carve-Out Event (as defined below), (ii) are approved for payment by an order of the Court, after notice and a hearing, or pursuant to an administrative procedure established by Court order, and (iii) do not exceed, without the prior written consent of Liberty, in the aggregate as to all amounts paid or to be paid postpetition, the sum of $50,000 plus any retainer held by the Debtor Professionals on the Petition Date; (b) quarterly fees required to be paid to the Office of the U.S. Trustee pursuant to 28 U.S.C.A. § 1930(a)(6); and (c) unpaid wages of the Debtor (collectively, the "Carve-Out"); provided, however, that no Cash Collateral and no amounts received pursuant to the Carve-Out shall be used by any person or entity to pay Professional Expenses incurred in connection with any attempt to invalidate, set aside or subordinate the Liberty Prepetition Indebtedness, the Liberty Prepetition Liens or the Replacement Liens. The term "Carve-Out Event" shall mean any act or omission by Debtor in violation of the terms of this Order.

9. Reservation of Additional Rights of Liberty. Nothing in this Order constitutes a finding with respect to the adequacy of the protection of Liberty's interests in the Liberty Prepetition Collateral. Liberty shall not have waived any rights it has and shall retain all rights available pursuant to the Bankruptcy Code and applicable law.

10. Further Hearing. The Motion is set for a further hearing to consider authorizing the further use of Cash Collateral as set forth on the Budget attached to the Motion on July __, 2024 at ___:__ _.m.

11. Rights of Third Parties. Nothing in this Order shall preclude the Debtor, any creditor, or any subsequently appointed creditors' committee or trustee from objecting to or otherwise challenging the validity or amount of the Liberty Prepetition Indebtedness or the amounts owed to First Citizens and Philadelphia Indemnity, or the extent, validity or perfection of Liberty's

Case 24-20562    Doc 5-2    Filed 06/18/24    Entered 06/18/24 18:01:30    Page 11 of 11

prepetition liens upon and security interests in the Liberty Prepetition Collateral or the extent, validity or perfection of First Citizens and Philadelphia Indemnity's liens upon and security interests in property of the Debtor.

10

Active/84253.3/IJG/15428586v2

prepetition liens upon and security interests in the Liberty Prepetition Collateral or the extent, validity or perfection of First Citizens and Philadelphia Indemnity's liens upon and security interests in property of the Debtor.

10

Active/84253.3/IJG/15428586v2